IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| XL INSURANCE AMERICA, INC. f/k/a/ WINTERTHUR INTERNATIONAL AMERICA INSURANCE COMPANY, | § § § § § § § § § § § § § | |
| Plaintiff, | | Civil Action No. 3-07-cv-1701-M |
| vs. | | |
| TIG SPECIALITY INSURANCE COMPANY, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

A primary insurance carrier mistakenly settled a claim on behalf of its insured for an amount exceeding its applicable policy limit. The question presented here is whether the primary carrier is entitled to recover the amount of its overpayment from the insured's excess carrier. The Court concludes that it is not entitled to such recovery, and thus **GRANTS** Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

## FACTUAL BACKGROUND

The following facts are undisputed. Plaintiff XL Insurance Company ("XL") and Defendant TIG Specialty Insurance Company ("TIG") provided primary and excess insurance coverage, respectively, to Electric Mobility ("Electric"). The primary coverage provided an aggregate policy limit of $2,000,000. XL settled a claim on Electric's behalf for $180,000 ("*Wenner* settlement").[1] At the time of the settlement, however, only $54,930.92 remained available under XL's policy. After discovering its overpayment, XL

---

[1] Plaintiff's Complaint and the parties' briefs do not provide details on the settlement or underlying claim.

requested, but was denied, reimbursement in the amount of $125,069.08 from TIG. XL subsequently filed this suit, seeking reimbursement from TIG under theories of contractual and equitable subrogation.

One sentence of XL's responsive brief is devoted to the circumstances surrounding XL's overpayment: "When XL funded the *Wenner* settlement pursuant to this duty [to defend and indemnify Electric], XL reasonably, albeit mistakenly, believed that the aggregate limits of the XL policy had not been exhausted." The responsive brief does not describe how, or why, XL miscalculated the remainder available under the policy.

## ANALYSIS

TIG seeks dismissal of XL's claims for equitable and contractual subrogation under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court finds that TIG's contentions are appropriately analyzed under Rule 12(b)(6), and dismisses Plaintiff's claims on that ground. *See generally*, *General Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 949 (5th Cir. 1999).

### A. Legal Standard

In considering a Rule 12(b)(6) motion, a court must liberally construe the pleading in favor of the plaintiff, and all well-pleaded facts in the complaint must be taken as true. *Campbell v. Wells Fargo Bank, NA.*, 781 F.2d 440, 442 (5th Cir. 1986). While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, ___U.S. ___, 127 S.Ct. 1955, 1964-65 (2007). Factual allegations must be sufficient to raise a non-speculative right to relief. *Id.* at 1965.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle,* No. 06-51067, 2008 U.S. App. LEXIS 3102, at *8 (5th Cir. Feb. 12, 2008).

### B. Equitable Subrogation

XL contends that it is entitled, under the doctrine of equitable subrogation, to recover its overpayment from TIG. Equitable subrogation does not depend on a contract, but arises when one person, acting involuntarily, has paid a debt for which another was primarily liable, and which, in equity, should have been paid by the primarily liable person. *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, 236 S.W.3d 765, 774 (Tex. 2007). A payment by an insurer is involuntary when made by the insurer in good faith, and under a reasonable belief that the payment was necessary to protect its personal or legal interests. In the analysis of both contractual and equitable subrogation, the insurer stands in the shoes of the insured, recovering based on the insured's rights against the third party.

Here, XL paid a debt for which another was primarily liable. Only $54,930.92 remained under the primary policy, but XL advanced $180,000 towards the *Wenner* settlement. The Court assumes that TIG, as excess carrier, would be liable for a settlement in excess of the primary policy limit.

The second element—the payment was involuntary—has two prongs: the payor must have a good-faith, reasonable belief that payment was necessary for its protection. XL asserts, without contradiction, that it had a good-faith belief that the policy limit had not been exhausted, thus requiring its payment of the entire settlement amount of $180,000. The relevant issue here is whether XL can establish that its miscalculation of the amount remaining under the policy was reasonable.

A payment is necessary for the payor's protection when the payor "has any palpable interest which will be protected by the extinguishment of the debt . . . ." *Foremost County Mutual Insurance Co. v. Home Indemnity Co.*, 897 F.2d 754, 762 (5th Cir. 1990). For example, an insurer's settlement of a claim on behalf of its insured to avoid exposure to an adverse jury verdict may be reasonably necessary for the insurer's protection. Such a situation was presented in *Arkwright-Boston Manufacturers Mutual Insurance Co. v. Aries Marine Corp.*, 932 F.2d 442, 447 (5th Cir. 1991). There, the primary insurer was insolvent, and the excess carrier estimated that its exposure in the suit was between $2,000,000 and $5,000,000. The Court concluded that the excess insurer's settlement of a claim against its insured for $982,000 was reasonably necessary to protect the excess insurer from an excess judgment, and that the excess carrier thus had an equitable subrogation claim against the primary carrier.

Here, XL contends that it reasonably believed that its payment of the full settlement amount was necessary for its protection for three reasons. First, XL argues that the payment was necessary to avoid exposure to an excess judgment. However, at the time of the settlement, only $54,930.92 remained under the policy. An excess judgment would only have exposed XL to liability up to this amount. Accordingly, XL's settlement of the suit for $125,069.08 *more* than the policy limit did not protect any "palpable legal interest" of XL.

XL's second argument is that its payment of the full settlement amount was necessary for the protection of Electric. Although the settlement reduced Electric's exposure to an excess judgment, a payment made by an insurer solely for the protection of its insured is considered voluntary, not involuntary. *Foremost*, 897 F.2d at 762; *see Mid-*

*Continent*, 236 S.W.3d at 765 ("[a] reasonable primary insurer, which did not improperly handle the claim, would not pay more than its policy limits."); *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993) (noting that equitable subrogation is unavailable to a "mere . . . volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own.").

In *Foremost County Mutual Insurance Co.v. Home Indemnity Co.*, the Fifth Circuit held that a payment by a primary carrier in excess of the policy limit did not protect the carrier's legal interests, and was thus voluntary. 897 F.2d at 762. There, the insured, Butler, was covered under separate policies, each with a $250,000 limit, provided by two primary carriers, Foremost and Home. Foremost refused to provide a defense to Butler. Butler settled with the plaintiff, who agreed not to execute a judgment that the plaintiff had obtained against Butler, in exchange for Butler's assigning his claim against Foremost to the plaintiff. Foremost settled the claim assigned to the plaintiff for $3,200,000, and then sued Home to recover the amount paid in excess of its policy limit. The Fifth Circuit denied Foremost's claim, concluding that its payment of $3,200,000 was not necessary for its protection, since its policy limit was only $250,000. The Court emphasized that "[m]erely protecting its client's interests is insufficient to prevent Foremost from being considered a volunteer." *Id*. Thus, whether XL's overpayment protected the interests of its insured is not determinative of whether such payment was voluntary.

Third, XL contends that it reasonably believed that its excess payment was necessary for its protection, because it determined, "albeit mistakenly, . . . that the

aggregate limits of the XL policy had been exhausted." As the party asserting a right to equitable subrogation, XL bears the burden of establishing the reasonableness of its overpayment. However, XL set forth no facts establishing that its miscalculation of the amount remaining under the policy was reasonable. Because XL has not presented specific facts demonstrating a reasonable basis for its miscalculation of the amount remaining under the policy, there is no basis for this Court to conclude that its excess payment was reasonable. "The insurer's duty to act as an ordinarily prudent person in business management extends to claim investigation, trial defense and settlement negotiations." *American Centennial Insurance Co. v. Canal Insurance Co.*, 843 S.W.2d 480, 482 (Tex. 1992). The Court concludes that a prudent business manager, possessing all material information about its insured's claim history, would not have settled the case for an amount in excess of the policy limit.

XL responds that Texas courts liberally apply the "reasonable belief" rule. XL cites *Keck, Mahin & Cate, Grant Cook v. National Union Fire Insurance Co. of Pittsburgh, PA*, where, in the context of a subrogation claim against the primary carrier, the Texas Supreme Court considered whether an excess insurer's settlement of a claim on behalf of its insured was reasonably necessary for the insurer's protection, and thus involuntary. 20 S.W.3d 692, 703 (Tex. 2000). There, the primary carrier argued that the excess carrier's settlement of the claim was not reasonably necessary for the excess carrier's protection, because the excess policy did not actually cover the settled claim. Rejecting this argument, the Texas Supreme Court concluded that the excess carrier's determination of coverage was reasonable. In so holding, the Court emphasized the policy rationale for liberally applying the reasonable belief rule:

> If an insurance company's right to subrogation could be challenged by the wrongdoer on the grounds that the policy did not actually provide coverage, it would necessarily be in the company's interest to litigate all questionable claims with its insured. The effect of ignoring the reasonable belief rule, therefore, is to discourage insurance companies from paying or settling disputed claims and thereby force insureds more often into litigation with their insurers.

*Id*. This case does not involve the kind of "questionable claim" with which *Keck* was concerned— that is, a policyholder's claim that the insurer would not contest, but for its concern that, by not contesting coverage, it would not be able to assert an equitable subrogation claim, because a court might find its determination of coverage to have been unreasonable. Here, a claim by Electric against XL for payment of an amount in excess of the policy limit would not have presented such a "questionable claim." To the contrary, XL would certainly contest such a claim, which would be barred by its policy limits. Because the rationale in *Keck* does not embrace the facts presently before the Court, the Court finds that Plaintiff's citation of *Keck* is unavailing.

XL essentially asks the Court to find as reasonable every insurer's oversight, however unjustified or inexcusable. Adoption of such a rule would remove an insurer's incentive carefully to handle its insured's claims, and generate needless corrective litigation. Thus, the Court's application of the reasonable belief requirement is consistent with sound public policy.

A recent Texas Supreme Court decision supports the Court's analysis of the equities here. In *Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co.*, the insured, Kinsel, was covered by two comprehensive general liability policies provided by Liberty Mutual and Mid-Continent. 236 S.W.3d 765. The policies each provided Kinsel with $1,000,000 in

coverage. Additionally, Liberty Mutual provided Kinsel with $10,000,000 in excess liability insurance. The case settled for $1,500,000; however, Mid-Continent, assigning a substantially lower settlement value to the case, only agreed to advance $150,000 towards the settlement. Liberty Mutual thus funded the remaining $1,350,000—$350,000 more than its primary policy limit. Liberty Mutual subsequently sued Mid-Continent, claiming, among other things, that it was entitled to recover from Mid-Continent its pro rata share of the settlement amount, including amounts paid by Liberty Mutual above its $1,000,000 policy limit. In rejecting Liberty Mutual's equitable subrogation claim, the Texas Supreme Court stated: ". . . [E]quity does not favor such a remedy. A reasonable primary insurer, which did not improperly handle the claim, would not pay more than its policy limits. In paying $350,000 more than its $1,000,000 policy limits, Liberty Mutual seems to have been motivated by concern for its excess insurance policy." *Id.* at 776. That approach, applied to this case, causes the Court to reject XL's equitable subrogation claim.

In rejecting XL's equitable subrogation claim, the Court also relies on *Arkwright*, discussed earlier. 932 F.2d at 447. In *Arkwright*, after the primary carrier became insolvent, the excess insurer advanced $982,000 to settle a claim on behalf of its insured. The excess carrier subsequently sued the primary carrier to recover the $500,000 limit under the primary policy. The Fifth Circuit stated, "[M]oney voluntarily paid with full knowledge of all of the facts . . . cannot be recovered back, although it was paid upon a void or illegal demand or upon a claim which had no foundation in fact and was paid without consideration." *Id.* The Fifth Circuit limited this rule's applicability to cases where "there appears an intention on the part of the payor to waive his rights." *Id*. The court concluded

that the requirements for waiver were not met, since the excess insurer expressly notified the primary carrier, prior to settlement, of its intention to recover on the primary policy.

Here, however, waiver occurred. The first requirement—XL's possession of "full knowledge of all the facts"—was satisfied, at least constructively. XL possessed all information relevant to whether Electric had exhausted its policy limits, based on its claim history and amounts paid on its behalf by XL. Second, XL manifested an intention to waive its rights by not reserving its right, or otherwise notifying TIG or Electric of its intention, to seek to recover the portion of the settlement exceeding its policy limit. Instead, XL tendered the full settlement amount, without any reservation or limitation.

### C. Contractual Subrogation

Alternatively, XL asserts a right to reimbursement of its excess payment under a theory of contractual subrogation. Contractual subrogation is created by an agreement that grants the right to pursue reimbursement from a third party in exchange for payment of a loss. *Id.* at 774. Here, the subrogation clause in XL's policy stated:

> 8. Transfer of Rights of Recovery Against Others to Us.
>
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

TIG argues that two conditions required for reimbursement under the subrogation clause are not met here. First, TIG contends that XL was only entitled to recover "payment[s] . . . made under this Coverage Part," and that XL's settlement for an amount in excess of the

policy limit did not constitute a payment under the policy, which the Court construes is what "Coverage Part" references. Second, TIG argues that the subrogation clause only entitled XL to reimbursement when "the insured has rights to recover all or part of any payment." Citing *Mid-Continent*, TIG argues that XL's complete indemnification of Electric terminated XL's right to recover its excess payment from TIG. "Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation." 236 S.W.3d at 775-76. Finding that XL's excess payment did not constitute a payment "under this Coverage Part," the Court does not reach TIG's alternative ground for dismissing XL's contractual subrogation claim.

The contractual subrogation clause here entitled XL to recover "payment[s] we have made under this Coverage Part." TIG narrowly construes this language to limit recovery to payments that XL was obligated to make under the policy. Because XL's excess payment was not contractually required, XL contends that the payment was not made under the policy. XL did not explicitly respond to this contention.

In *Foremost*, the Fifth Circuit, analyzing a substantively identical subrogation provision, considered whether a primary insurer's settlement of a claim for an amount in excess of its policy limit constituted a "payment under this policy." 897 F.2d at 762. Although the court did not conclusively decide the question, it expressed doubt about the primary insurer's right to recover its excess payment: "It is uncertain whether a payment beyond policy limits, even if arising from coverage of the policy, can constitute a 'payment under this policy.'" *Id*.

The Court is of the view that a payment is only made under a policy when the policy may reasonably be viewed as providing for such a payment. Here, the policy did

not provide for XL to pay a claim on behalf of its insured for an amount in excess of the policy limit. XL's excess payment was gratuitous, rather than obligatory, under the policy.

Other provisions in the policy confirm that XL's excess payment was not made "under this Coverage Part." Section I of the policy, entitled *Coverages*, defined XL's rights and obligations as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages . . . . But:
> (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements . . . .
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTAL PAYMENTS – COVERAGES A AND B.

Accordingly, XL's payment of $54,930.92—the portion of the *Wenner* settlement within the policy limit—terminated its obligations to Electric. Thereafter, XL had no right or duty further to defend Electric, and its obligation and liability to make payments on behalf of Electric had ended. Hence, XL's payment of the balance of the *Wenner* settlement was not pursuant to its contractual obligations and, therefore, was not a payment "under this Coverage Part." XL's contractual subrogation claim is thus **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's contractual and equitable subrogation claims under Rule 12(b)(6). There are no

other substantive claims for relief and, therefore, Plaintiff's suit is **DISMISSED**.

**SO ORDERED**.

August 13, 2008.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS